BLOCKER, ADM'R. v BURNESS.

1. *Possession of personal property remaining with the vendor after an absolute sale, is not fraud per se, but a badge of fraud merely, casting on the vendee the ne-cessity of showing that the sale is bona fide, and was not made with the intent to delay, hinder, or defraud creditors*

2. *A witness is competent who believes in the existence of a God, and that he will punish falsehood and perjury in this world ; although he does not believe in future rewards and punishments.*

Error to the Circuit Court of Lawrence County.

THIS was a trial of the right of property, in which the plain-tiff in error was the plaintiff in execution, and the defendant in error the claimant of the property, in which the claimant had judgment.

It appears from a bill of exceptions taken in the cause, that the claimant relied on a conveyance, made to him by the de-fendant in execution, of the property levied on, which was ab-solute in its terms, and proved that a fair consideration was paid by him for the property. The possession of the property remained with the defendant in execution.

The plaintiff's counsel moved the Court to instruct the jury that, if they believed from the evidence, that the possession of said property remained with the defendant in the execution, up to the time of the levy, and still continued with him, said conveyance was fraudulent *per se*, and void as against the plaintiff in execution; which the Court refused, and charged the jury that, if they believed from the evidence, that the trans-action was upon fair and sufficient consideration, was· *bona fide*, and not intended to hinder or delay creditors, they must find the issue in favor of the defendant.

The defendant having introduced a witness, his competency was objected to, on the ground that he did not believe in re-wards and punishments after death—his belief was proven to be, that the Almighty punished mankind in this life for their misdeeds; but that there was no punishment, but universal and

everlasting happiness in the world to come—that he believed in a God, the obligation of an oath, and that divine justice would punish perjury and all other offences during this life. But the Court permitted the witness to testify, to which the plaintiff excepted, as also to the charge, on the evidence, and assigns the same as error.

McCLUNG, for the plaintiff in error, submitted the case.

COOPER, contra, as to the competency of the witness, cited, 2 Cowen Rep. 431, 2, and 572, and note.

As to the question of fraud, 3 Cow. Rep. 166; 8 Wendell, 375; 7 Greenleaf 241; 1 Haywood 423; 1 Hawkes 320; 2 New Hampshire 13; 6 Connecticut 277; 1 Pickering 399; 295; 10 ibid. 199; 3 ibid. 255; 16 Massachusetts 279; 15 ibid. 287.

ORMOND, J.—The learned and elaborate opinion of Chief Justice Willes, in the case of Omichund v. Barker, Willes' Rep. 538 is the text generally resorted to on this interesting subject. The question in that case was, whether an East Indian, professing the Gentoo religion, who had given evidence on a commission issuing out of Chancery, who had been sworn according to the custom of his religion, was a competent witness

The learned Judge proceeds to show, that the substance of an oath had nothing to do with Christianity—that oaths were more ancient than the Christian religion, and successfully combats the notion of Lord Coke, that an infidel could not be a witness. He expressly lays down the doctrine, "that an infidel, who believes in a God, and that he will reward and punish him in this world, but does not believe a future state may be examined on his oath."

In the case of Butts v. Swartwout, 2 Cowen's Rep. 431, a witness professing the same religious belief the witness in this case appears to entertain, was held to be a competent witness. Indeed, if we consider the source of the obligation of an oath, it appears strange that the question should be raised in this enlightened age of the world. An oath is a solemn adjuration to God, to punish the affiant if he swears falsely. The sanction of the oath is a belief, that the Supreme Being will punish

falsehood; and whether that punishment is administered by remorse of conscience, or in any other mode in this world, or is reserved for the future state of being, cannot affect the question, as the sum of the matter is a belief, that God is the avenger of falsehood; see also 15 Mass. Rep. 184.

The question arising on the charge of the Court, is of the utmost importance to the community; and it is but mere justice to the people of the State, that the question should be put on such a footing, that it can be understood and acted on with safety.

Previous to the decision of this Court, in the case of Hobbs v. Bibb, 1 Stewt. Rep. 54, the question was in doubt, the Judges on the Circuits many of them holding the doctrine of the case of Hamilton and Russel, 1 Cranch 309; which is, that, when possession remains with the grantor after an absolute sale of personal property, it was conclusive evidence of fraud, or as it was termed *fraud per se*; whilst others held that such a state of facts only created a presumption of fraud, which the party affected by it, might repel by showing that the transaction was fair and *bona fide*. To this effect was the decision of this Court in the case of Hobbs v. Bibb.

Some time afterwards, the case of Ayers v. Moore came under consideration. [2 Stewart 336.] In that case a supposed distinction was engrafted on the case of Bibb v. Hobbs, which however, did not, in my opinion, substantially change its character. . In the last case, the question at *nisi prius* had been put on the ground alone of the *bona fides* of the transaction; and the Court held that, although the consideration was *bona fide* and paid, yet it might have been done to delay or hinder creditors, therefore the ground assumed on the Circuit was too narrow. Although I am unable to perceive how a transaction could be *bona fide*, and yet made with the design of enabling a debtor to delay or hinder his creditors, yet I have no objection, that this should be considered the test. Upon this footing, the law as I understand it, has remained ever since in this State.

The rule as laid down in the case of Hamilton v. Russel, is an artificial and purely arbitrary distinction, which declares that the existence of certain facts shall be conclusive evidence

of a fraudulent intent; and its necessity is supposed to rest on public policy. The opposite doctrine, and such as I understand to be the settled law of this State is, that no transaction shall be considered fraudulent, which is not so in *point of fact;* and supposes the ability in Courts and Juries to eviscerate the truth of the case, and determine whether a transaction be fraudulent or not. Where the former rule imputes fraud from the existence of certain facts, so conclusively as not to admit of contradiction—the latter holds it to be a badge of fraud merely, and requires the party affected by the presumption thus raised, to prove that the transaction is fair and honest..

The question is not now, which of these rules is preferable as a mean of administering justice; but whether it is wise to clog the rule we have adopted by engrafting on it nice and almost insensible distinctions, the inevitable tendency of which would be to embarrass the administration of justice, and to entrap the unwary.

The charge in this case was, if the transaction and sale was upon a fair and sufficient consideration, was *bona fide* and not intended to delay and hinder creditors; it should be supported. This is, in my opinion, a sound exposition of the rule, that possession remaining with the vendor, after an absolute sale of personal property, is a badge of fraud, devolving on the party the necessity of showing that the transaction is honest, and that a sufficient consideration has been paid for it. By so doing, the apparent incongruity of the ownership not being with the possession is explained; and certainly the plaintiff has no claim on the principles of justice, to have his execution satisfied out of property, which does not belong to the defendant in execution. Should the property be suffered to remain so long, that the possessor acquired a delusive credit from the apparent ownership after such sale, another question depending on different principles would arise, which it is not necessary to determine at this time.

Let the judgment be affirmed.

GOLDTHWAITE, J.—I concurr in the opinion delivered by Judge Ormond. My impression has been, that the case of Ayers and Moore, was not considered by the Court, as affect-

ing the general rule declared in Hobbs and Bibb. The judgment of the Circuit Court in the former case was reversed, because the instructions given by it to the jury, did not conform to the law, as settled in the case last named.

COLLIER, C. J.—I concur with a majority of the Court in the opinion, that the witness who was objected to by the plaintiff in error, on account of his religious opinions, was entirely competent, according to the rule upon the subject, as understood and settled at the present day.

I have not the slightest wish to overrule the case of Hobbs v Bibb, 2 Stewt. Rep. 54; but am satisfied with it, as explained by the case of Ayers v. Moore, ibid. 336; yet I think that the case at bar is not sustained by the opinion of the Court in the latter. In that case, the Court considered that the circumstance of the negro boy, the subject of the sale, being too young to render service to the vendee, and that he was permitted to remain with his family during his tender years, or that from other circumstances it was not at all convenient for the vendee to take him home, would, if shown to the jury, repel the inference of fraud arising from the possession continuing unchanged. And the opinion of the Court proceeded upon the idea that, although the sale might have been fair, and without intention to defraud any one, yet the legal presumption of fraud from the continued possession of the vendor should be explained away. Such I understand to be the doctrine maintained in Bissell v. Hopkins, 3 Cow. Rep. 166; Swift et al. v. Thompson, 9 Conn. Rep. 63; Sydney v. Gee, 4 Leigh's Rep. 535; Gould v. Ward, 4 Pick. Rep. 104; Shumway et al. v. Butler, 8 Pick. Rep. 443; Talcott v. Wilcox, 9 Conn. Rep. 134.

The charge given to the jury assumes that, if the purchaser of personal property, who has taken an absolute bill of sale for the same, shows that his purchase was on a valuable consideration, and without intention to defraud the creditors of the vendor, the inference of fraud from the possession of the latter is sufficiently repelled. It is certainly necessary to show such facts as will satisfy the jury of the fairness of the sale; and in addition, according to my view of the law, special reasons

must be shown why possession does not follow the contract of sale.

The possession, unless stipulated for at the time of the purchase, must be regarded as a matter of subsequent arrangement; and cannot be explained by proof that the purchase was fair and *bona fide*. But a majority of the Court think otherwise; and without extending these views, I content myself with declaring, that thus far I cannot assent to their opinion.